**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 1:16-cr-41 |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | MEMORANDUM OPINION AND |
| | ) | ORDER |
| WALTER WALKER, | ) | |
| | ) | |
| DEFENDANT. | ) | |

This matter is before the Court on the motion of defendant Walter Walker ("Walker") for a compassionate release due to COVID-19 circumstances. (Doc. No. 23 ["Mot"].) Plaintiff United States of America (the "government") opposes the motion. (Doc. No. 24 ["Opp'n"].) For the reasons that follow, Walker's motion is denied without prejudice.

**I.  BACKGROUND**

On February 5, 2016, an information issued charging Walker with conspiring to distribute and distributing five kilograms or more of cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A) and 846, and money laundering, in violation of 18 U.S.C. § 1957. (Doc. No. 1.) On March 3, 2016, Walker pled guilty to the charges in the information, and, on April 5, 2017, the Court sentenced Walker to a term of imprisonment of 57 months. (Doc. No. 17 [Judgment].) Dixon is currently serving his sentence at FCI Elkton and has a projected release date of July 13, 2021. *See* https://www.bop.gov/inmateloc/ (last visited 4-16-2020). On March 26, 2020, Walker submitted a Supervision Release Plan for early release to the warden at FCI Elkton. (Doc. No. 23-2.) Walker has yet to receive a response from the warden or the BOP on his requested release plan. (Mot. at 157.)

On April 10, 2020, Walker filed the present motion, pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). In support of his motion, he notes that FCI Elkton has been "the center of severe illness due to an outbreak of the Coronavirus resulting in the death of three (3) individuals from COVID-19." (*Id*. at 155.) This is of special concern to Walker because he "suffers from multiple medical issues involving high blood pressure, a low hemoglobin blood count and a shortness of oxygen." (*Id*.; Doc. No. 23-3 [Medical Records].) He asks the Court to consider his post-offense rehabilitative efforts to determine whether a reduction is warranted. (Mot. at 157.)

The government argues that Walker's motion should be denied because he has not exhausted his administrative remedies, and because Walker has not made the requisite showing under 18 U.S.C. § 3582. (Opp'n at 187.)

**II.     DISCUSSION**

The sentencing court has no inherent authority to modify an otherwise valid sentence. *United States v. Washington,* 584 F.3d 693, 700 (6th Cir. 2009). Rather, the authority of the Court to resentence a defendant is limited by statute. *United States v. Houston,* 529 F.3d 743, 748–49 (6th Cir. 2008) (citing *United States v. Ross,* 245 F.3d 577, 858 (6th Cir. 2001)). Title 18 U.S.C. § 3582(c)(1)(A) provides that courts may "reduce [an inmate's] term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment)" where "extraordinary and compelling reasons warrant [release]," or the prisoner's age and other factors make release appropriate. 18 U.S.C. § 3582(c)(1)(A).

Prior to 2018, only the Bureau of Prisons ("BOP") could move a district court under § 3582(c)(1)(A) for the compassionate release of a federal prisoner. On December 21, 2018, the First Step Act amended 18 U.S.C. § 3582(c)(1)(A) to allow prisoners to directly petition courts for

2

compassionate release. The amendment provides prisoners with two direct routes to court: (1) file a motion after fully exhausting administrative appeals of the BOP's decision not to file a motion for compassionate release, or (2) file a motion after "the lapse of 30 days from the receipt . . . of such a request" by the warden of the prisoner's facility. 18 U.S.C. § 3582(c)(1)(A). No exceptions to the exhaustion requirement are listed in the statute.

Walker does not represent that he has exhausted all administrative rights to appeal the BOP's failure to bring a motion on his behalf, or that 30 days has passed since the warden of his facility received a request from him to file such a motion. In fact, the requisite 30 days has not passed since he submitted his Supervision Release Plan to the warden of his institution.

Courts are split on whether a district court may waive the exhaustion and 30-day requirement due to the exigent circumstances presented by COVID-19. *Compare United States v. Zukerman*, 16 Cr. 194 (AT), 2020 WL 1659880, at *3 (S.D.N.Y. Apr. 3, 2020) (waiving exhaustion requirement in light of COVID-19); *United States v. Colvin*, No. 3:19cr179 (JBA), 2020 WL 1613943, at *2 (D. Conn. Apr. 2, 2020) (same); with *United States v. Raia*, No. 20-1033, 2020 WL 1647922, at *2 (3rd Cir. Apr. 2, 2020) (finding exhaustion requirement in § 3582 mandatory); *United States v. Alam*, No. 15-20351, 2020 WL 1703881, at *2 (E.D. Mich. Apr. 8, 2020) (collecting cases finding that "a failure to satisfy 18 U.S.C. § 3582(c)(1)(A)'s filing requirements bars defendants from filing motions for compassionate release, and that the judiciary has no power to craft an exception to these requirements for defendants seeking release during the COVID-19 pandemic"); *see also United States v. Johnson*, No. RDB-14-0441, 2020 WL 1663360, at *2 (D. Md. Apr. 3, 2020) (holding that the "exhaustion requirements of § 3582(c)(1)(A) are jurisdiction in nature, and [the district] court may not expand its jurisdiction by waiving such requirements").

In *Raia*, the Third Circuit ruled that the fact that the petitioner did not wait the requisite 30

day period before seeking a compassionate release from the district "present[ed] a glaring roadblock foreclosing compassionate release[.]" *Raia*, 2020 WL 1647922, at \*__. In so ruling, the court explained:

> We do not mean to minimize the risks that COVID-19 poses in the federal prison system, particularly for inmates like Raia [68 year old individual with diabetes and "heart issues"]. But the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread. *See generally* Federal Bureau of Prisons, *COVID-19 Action Plan* (Mar. 13, 2020, 3:09 PM), https://www.bop.gov/resources/news/20200313_covid19.jsp. Given BOP's shared desire for a safe and healthy prison environment, we conclude that strict compliance with § 3582(c)(1)(A)'s exhaustion requirement takes on added—and critical—importance. And given the Attorney General's directive that BOP "prioritize the use of [its] various statutory authorities to grant home confinement for inmates seeking transfer in connection with the ongoing COVID-19 pandemic," we anticipate that the exhaustion requirement will be speedily dispatched in case like this one. Memorandum from Attorney Gen. to Dir., Bureau of Prisons 1 (Mar. 26, 2020), https://www.justice.gov/file/1262731/download. So we will deny Raia's motion.

*Id*.

The Court agrees with the reasoning and logic of the Third Circuit. In addition to a lack of any indication in the language of § 3582(c)(1)(A) that the exhaustion requirement is discretionary or may be waived, the exhaustion requirement serves the important purpose of allowing the BOP—an agency that is in a better position to understand an inmate's health and circumstances relative to the rest of the prison population and identify "extraordinary and compelling reasons" for release—the opportunity to address such requests in the first instance. Accordingly, the Court "will not read an exception into § 3582(c)(1) which does not exist[,] and Walker's motion is denied for failure to exhaust his administrative remedies. *See Johnson*, 2020 WL 1663360, at \*6 (denying inmate's motion for compassionate release for failure to exhaust administrative remedies).

Moreover, as the government notes, FCI Elkton is currently evaluating its inmate

population to determine which inmates are appropriate to transfer to home confinement. At the direction of the Attorney General, "the BOP has begun immediately reviewing all inmates who have COVID-19 risk factors, as described by the CDC, starting with inmates incarcerated at . . . FCI Elkton . . . to determine which inmates are suitable for home confinement." Fed. Bureau of Prisons, Home Confinement, www.bop.gov/resources/news/20200405_covid19_home_confinement.jsp, April 5, 2020 (last accessed April 16, 2020). According to the BOP's website, the BOP has already increased home confinement by more than 40% since March 2020. *Id*. The fact that the BOP is actively considering whether Walker and other potentially vulnerable inmates are suitable for release to home confinement confirms the Court's decision that it must afford the BOP the statutory period of time to resolve Walker's request.

### III. CONCLUSION

For the foregoing reasons, as well as the reasons in the government's brief opposing compassionate release, Walker's motion, as supplement, for a compassionate release is denied without prejudice.

**IT IS SO ORDERED**.

Dated: April 17, 2020

**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**

5